UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

NATALIE SMITH,

                Plaintiff,

     - against -

GHURKA TRADING & DESIGN LLC, BRIGHTWORK BRAND HOLDINGS, CORP., GREEN BULL BAGS JR LLC, GHURKA BRANDS LLC, EXTENSIS GROUP LLC, BANYAN MEZZANINE FUND II, L.P., ARNOLD COHEN, DIEGO MCDONALD, GLENN POLLACK, STEVEN LATKOVIC, ADAM KAPLAN, RICHARD STARKE, and SIMONETTA MORRISON,

                Defendants.

------------------------------------X

18 Civ. 09344 (LGS)

AMENDED COMPLAINT

PLAINTIFF DEMANDS A TRIAL BY JURY

       Plaintiff Natalie Smith ("Smith" or "plaintiff"), by her attorneys, Vladeck, Raskin & Clark, P.C., complains of defendants Ghurka Trading & Design LLC ("Ghurka"), Brightwork Brand Holdings, Corp. ("BBH"), Green Bull Bags Jr LLC ("GBB"), Ghurka Brands LLC ("Ghurka Brands"), Extensis Group LLC ("Extensis"), Banyan Mezzanine Fund II, L.P. ("Banyan"), Arnold Cohen ("Cohen"), Diego McDonald ("McDonald"), Glenn Pollack ("Pollack"), Steven Latkovic ("Latkovic"), Adam Kaplan ("Kaplan"), Richard Starke ("Starke"), and Simonetta Morrison ("Morrison") (collectively, "defendants")[1] as follows:

---

[1] Ghurka, BBH, GBB, Ghurka Brands, Extensis, and Banyan will be referred to collectively as "Corporate Defendants." Cohen, McDonald, Pollack, Latkovic, Kaplan, Starke, and Morrison will be referred to collectively as "Individual Defendants."

## NATURE OF THE ACTION

1. Smith is a successful fashion merchandising specialist. In May 2014, Ghurka, a retailer of high-end leather accessories, hired Smith as its Vice President of Merchandising and Retail Strategy. Smith excelled at her job. Unfortunately, in early 2017, Smith fell ill, requiring a short, eight-week medical leave. Ghurka refused to provide Smith this reasonable accommodation, allowing her only six weeks of leave. Thankfully, Smith was able to recover within Ghurka's artificially restricted time frame. Nonetheless, Ghurka would not allow Smith to return to work. Ghurka demanded that Smith assure that she was completely healed and would not become ill again. Smith, of course, could provide no such assurance. Ghurka then fired her.

2. Smith brings this action to remedy violations of federal and local disabilities law, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (the "ADA"); the New York State Human Rights Law, Executive Law § 290 et seq. (the "State Law"); and the Administrative Code of the City of New York § 8-107 et seq. (the "City Law"). She also brings this action to remedy violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Smith's ADA claims pursuant to § 107(a) of the ADA, 42 U.S.C.A. § 12117(a). This Court has jurisdiction over Smith's FMLA claims under 29 U.S.C. § 2617.

4. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Smith's State Law and City Law claims because these claims closely relate to the ADA and

FMLA claims, having arisen out of a common nucleus of operative facts, such that all claims form part of the same case or controversy.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants regularly conduct business in the Southern District of New York and a substantial part of the events or omissions giving rise to these claims occurred within this District.

6. Pursuant to § 8-502(c) of the City Law, Smith will serve a copy of the Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

7. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 24, 2017, complaining of the acts of discrimination and retaliation alleged herein. On or about July 18, 2018, the EEOC issued a Right to Sue letter. Smith has complied fully with the administrative prerequisites of the ADA.

## THE PARTIES

8. Smith is a citizen of New York who worked for defendants in their New York, New York offices until her employment was terminated in or around May 2017.

9. Ghurka is a New York corporation with its headquarters in New York City. Ghurka was Smith's employer.

10. BBH is a New York corporation with its headquarters in New York City. BBH was Smith's employer.

11. GBB is a Delaware corporation with its headquarters in Ohio. GBB is a successor to Ghurka and BBH.

12. Ghurka Brands is a Delaware corporation with its headquarters in Ohio. Ghurka Brands is a successor to Ghurka and BBH.

13. Extensis is a Delaware corporation with its headquarters in New Jersey. Extensis was Smith's co-employer with, among other things, the power to terminate Smith's employment. Extensis also participated in the unlawful decisions concerning Smith's employment.

14. Banyan is a Delaware corporation with its headquarters in Florida. Banyan provided financing to Ghurka. Its executives personally participated in the unlawful decisions concerning Smith's employment.

15. Cohen is, on information and belief, a resident of New York. Cohen was the Chairman and Chief Executive Officer of Ghurka with, among other things, the authority to terminate Smith's employment, and thus acted as Smith's employer. Cohen also personally participated in the unlawful decisions concerning Smith's employment.

16. McDonald is, on information and belief, a resident of New York. McDonald was the President of Ghurka with, among other things, the authority to terminate Smith's employment, and thus acted as Smith's employer. McDonald also personally participated in the unlawful decisions concerning Smith's employment.

17. Pollack is, on information and belief, a resident of Ohio. Pollack is the founder and a Managing Director at Candlewood Partners ("Candlewood"), which provided financing to Ghurka, and was a Manager of GBB. Pollack personally participated in the unlawful decisions concerning Smith's employment.

18. Latkovic is, on information and belief, a resident of Ohio. Latkovic is a Managing Director at Candlewood and was a Manager of GBB. Latkovic personally participated in the unlawful decisions concerning Smith's employment.

19. Kaplan is, on information and belief, a resident of Florida. Kaplan is a Managing Director at Banyan, which provided financing to Ghurka. Kaplan personally participated in the unlawful decisions concerning Smith's employment.

20. Starke is, on information and belief, a resident of Florida. Starke is a Managing Director at Banyan, which provided financing to Ghurka. Starke personally participated in the unlawful decisions concerning Smith's employment.

21. Morrison is, on information and belief, a resident of Connecticut. Morrison was a Merchant Consultant for Ghurka. Morrison personally participated in the unlawful decisions concerning Smith's employment.

## FACTUAL ALLEGATIONS

### Background

22. Smith specializes in fashion merchandising, the planning and strategy for designs, and selecting and presenting products that will sell.

23. Smith earned a Bachelor of Arts degree from Villanova University in 2008.

24. From 2008 to 2012, Smith worked for Burberry, a fashion company, as a buyer within various divisions. She was responsible for creating strategic business plans and developing merchandise strategies for her respective divisions.

25. From January 2013 until February 2014, Smith worked as a branding consultant. She assisted various companies with, among other things, merchandise and inventory planning and product development.

26. In February 2014, Smith started consulting for Ghurka, a high-end fashion company specializing in leather bags and other accessories.

27. During the relevant period, Ghurka had its headquarters and a dedicated flagship retail store in New York City and a number of temporary "pop-up" stores throughout the United States. Ghurka employed approximately 30 people.

28. As a result of Smith's excellent performance, Ghurka offered her a full-time position to begin in May 2014 as Vice President of Merchandising and Retail Strategy.

29. In that position, Smith oversaw and directed Ghurka's merchandising, buying, and planning functions. This work involved, among other things, negotiating with suppliers and managing the production schedule of Ghurka products. Smith also worked directly with the CEO on business strategy and retail operations. Smith routinely travelled overseas for work, especially to Ghurka's factory in Italy.

30. Smith reported directly to Ghurka's Chief Executive Officer ("CEO"). When Smith first joined Ghurka, the CEO was John Reuter. On information and belief, in or around March 2016, Cohen became the CEO.

31. In or around December 2016, by written agreement Extensis became Smith's "co-employer" with, among other things, the "authority to hire, fire, discipline and reassign" Smith.

32. On information and belief, through this agreement Extensis became interconnected with Ghurka's business operations and had joint authority over Ghurka's employees.

<u>Banyan Capital Becomes the Secured Creditor of Ghurka and Installs Cohen as CEO</u>

33. BBH became the sole owner of Ghurka in Fall 2011.

34. On information and belief, in or around March 2016, Banyan acquired Ghurka and BBH. Banyan became a secured creditor of Ghurka and BBH.

35. As a result of this arrangement, Banyan installed four new members of BBH's board of directors – sufficient to give Banyan majority control of the board.

36. Banyan also installed Cohen, one of those new board members, as Ghurka's and BBH's CEO.

37. McDonald became President of Ghurka and BBH in or around 2016 after Banyan took control of Ghurka and BBH.

<u>Smith Requests Sick Leave</u>

38. In early 2017, Smith became chronically ill, which required her to go to the emergency room.

39. Smith's doctor diagnosed her with idiopathic anaphylaxis. This diagnosis is applied to the condition where a patient suffers from anaphylactic attacks – <u>i.e.</u>, allergic reactions – but medical professionals are unable to determine the source of those attacks.

40. Idiopathic anaphylaxis may be caused by problems with the body's immune system. This condition affected Smith's ability to eat and sleep and caused cognitive impairment. It also gave Smith severe anxiety.

41. As a result of this condition, in or around mid-March 2017, Smith requested eight weeks of medical leave in order to "recover [her] health and diagnose and treat this illness."

42. Cohen granted Smith six weeks of medical leave instead of the eight weeks that she requested pursuant to her doctor's directive.

43. Cohen warned Smith that, while she was out on leave, he "would start looking for someone to fill [her] spot as [he] can't go without longer than 6 weeks."

44. The additional two weeks of medical leave Smith sought was a reasonable request.

45. On information and belief, decisions concerning Smith's accommodation request were made by and among Cohen, McDonald, Pollack, Latkovic, Kaplan, Starke, Morrison, and Extensis.

46. On information and belief, Kaplan and Starke were at this time acting in their capacities as Managing Directors of Banyan.

47. On information and belief, Latkovic and Pollack were at this time acting in their capacities as Managers of GBB.

48. Morrison was at this time an independent consultant retained by Ghurka.

<u>Defendants Fire Smith When She Cannot Certify That She Is "Fully Healed"</u>

49. Smith went on medical leave from mid-March 2017 to the beginning of May 2017.

50. As of the beginning of May 2017, Smith was ready to return to work. She was able to perform the essential functions of her job, including negotiating with suppliers and travelling overseas.

51. Ghurka would not allow Smith to return to work unless her doctor made a number of assurances that amounted to a guarantee that she was fully healed and would not require any further accommodations. When Smith explained that her doctor could not provide such a guarantee but would clear her to return to work, Ghurka fired her.

52. Smith first heard of Ghurka's "100% healed" policy when she informed Ghurka in or around April 2017 that she was feeling better and ready to return to work.

53. McDonald emailed Smith that, before she could return to work, her doctors would have to assure: (a) "they have identified and can combat the root cause of the episodes"; (b) "there will be no more episodes and they are under control"; (c) "the problem is not work related in any way"; and (d) "if you travel something related will not occur on the trip." By "episodes," McDonald was referring to Smith's anaphylactic attacks.

54. McDonald did not deny that Smith was able to perform the essential function of her job. Rather, he claimed that these assurances were necessary before she could return to work because of the risk of "liability." McDonald also expressed concern about Smith's work travel commitments and raised "the very scary possibility of something happening while [she was] in Italy or Spain and not near [her] doctors." No medical restriction prevented Smith from travelling overseas for work.

55. In response, Smith expressed surprise that she would need to certify that she was "100% better" and would not require any further reasonable accommodation. Smith explained that although her condition was under control, her doctor would not feel comfortable making such a guarantee for any patient. Smith also expressed disappointment that Ghurka did not grant her the full eight weeks of medical leave she had requested and then imposed requirements that prevented her from returning to work.

56. Smith interpreted Ghurka's response to her intention to return to work as a sign that Ghurka did not want her to return. In addition to Cohen's warning before she went on leave that he would look for replacements while she was out on leave, McDonald informed her that Ghurka had already interviewed potential replacements for her position and had "viable candidates to fill the position if needed."

57. Despite Smith's objections to the 100% healed policy, McDonald insisted that she provide these assurances from her doctor by May 5, 2017.

58. On or about May 5, 2017, Smith informed McDonald, once again, that her condition had stabilized and that she was "in a great place health-wise." Smith told McDonald that she was able to return to work and her doctor was willing to provide a note saying that.

59. Smith noted, however, that although she was "stable right now," her doctor would not assure that there would be no further incidents or that the source of her condition was unrelated to her employment.

60. Ghurka refused to accept Smith's doctor's note, stating that she could not perform her job. McDonald told Smith that she could not return to work "given that nobody knows what is causing your [health] incidents and that we would need you to start traveling very quickly."

61. On or about May 9, 2017, Smith told Ghurka that she intended to return to work on May 15, 2017.

62. In response, McDonald told Smith that same day that "[a]t this time you are not employed with Ghurka Trading and Design and there is not a position available for you."

63. On information and belief, the decision to require Smith to certify that she was fully healed was made by and among Cohen, McDonald, Pollack, Latkovic, Kaplan, Starke, Morrison, and Extensis.

64. On information and belief, Kaplan and Starke were at this time acting in their capacities as Managing Directors of Banyan.

65. On information and belief, Latkovic and Pollack were at this time acting in their capacities as Managers of GBB.

66. Morrison was at this time an independent consultant retained by Ghurka.

**Defendants Fabricate a Contention that Smith Refused to Return to Work**

67. In his May 9 email, McDonald told Smith that Ghurka provided her with six weeks of medical leave only in order to "find out what was wrong and be able to manage what was going on," and that now "all we know is your assertion that the doctors have no idea what is causing the issues and whether or not they are associated with something associated with the [employment] position."

68. McDonald refused to review the doctor's note that Smith had obtained that cleared her to return to work. The note stated that Smith's "condition ha[d] improved" and that she was "able to return to work."

69. Despite McDonald unambiguously telling Smith that Ghurka had terminated her employment on or about May 9, 2017, about one week later, on or about May 17, 2017, Megan McEwan ("McEwan"), Ghurka's Director of Operations, emailed Smith that "[b]ecause we have not received any documentation, at this point we have made the business decision to terminate your employment as it has become an und[ue] hardship to the organization." McEwan did not provide any details about the purported hardship Smith's medical leave had caused.

70. Smith responded to McEwan by emailing that she was told that she had been fired by McDonald on or about May 9, 2017. She expressed her belief that she had not been treated fairly.

71. McEwan replied that the conditions Ghurka imposed for returning to work were "not unilateral" but, purportedly, "something that you agreed to along with the company." McEwan claimed falsely that Ghurka "received nothing from any health professional that you

1028317 v1     11

would be cleared to return to work, let alone that they understood the problem and that they would clear you to travel internationally." Further, McEwan explained that Smith was fired because Ghurka "needed to have a full time, functioning Merchant in place by May 1st."

72. On or about June 13, 2017, Smith sent a letter through counsel to Ghurka informing them that she had claims of disability discrimination.

### GBB, A Secured Creditor, Forces the Sale of BBH and Ghurka

73. On or about June 14, 2017, Smith received a letter from Ghurka informing her that there was to be a "restructuring" and that Ghurka and BBH were to go through a foreclosure sale on June 26, 2017.

74. The letter stated that following the foreclosure sale, GBB, a Delaware corporation with its headquarters in Ohio, would acquire Ghurka and BBH. GBB would then transfer the assets to a new entity, Ghurka Brands Holdings LLC ("Ghurka Holdings"). Ghurka Holdings would in turn become the parent company of Ghurka Brands, which would be the operating company going forward.

75. On June 26, 2017, Cohen, copying McDonald, wrote Smith that the sale occurred and Ghurka "is an insolvent entity."

76. On July 24, 2017, BBH sent a letter to Smith notifying her that "as a result of catastrophic economic events," the assets of BBH and Ghurka were "sold pursuant to an Article 9 Public Sale, which was held on June 26, 2017."

77. On information and belief, GBB and Ghurka Brands knew, or would have discovered upon performing due diligence, that Smith's counsel had sent a letter to Ghurka dated June 13, 2017 alleging disability discrimination.

78. On information and belief, GBB and Ghurka Brands employed substantially the same workforce as BBH and Ghurka upon completion of the Article 9 sale, including substantially the same supervisory personnel, under substantially the same work conditions.

79. On information and belief, GBB and Ghurka Brands continued to source their products from the same factory in Italy where they created goods before the asset sale.

80. On information and belief, GBB and Ghurka Brands are successors in liability of Ghurka and BBH.

## FIRST CAUSE OF ACTION

(ADA – DISCRIMINATION AGAINST GHURKA, BBH, GBB, AND GHURKA BRANDS)

81. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 80 of this Complaint as if set forth fully herein.

82. Plaintiff has had, at all relevant times, a "disability" as that term is defined in the ADA. Plaintiff was able to perform the essential functions of the job with a reasonable accommodation, and therefore was at all relevant times a "qualified individual with a disability" within the meaning of the ADA.

83. By the acts and practices described above, Ghurka, BBH, GBB, and Ghurka Brands have discriminated against plaintiff on the basis of her disability, in violation of the ADA.

84. Ghurka, BBH, GBB, and Ghurka Brands acted intentionally and with malice and/or reckless indifference to plaintiff's federally protected rights.

85. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of discriminatory practices by Ghurka, BBH, GBB, and Ghurka Brands.

## SECOND CAUSE OF ACTION

(STATE LAW – DISCRIMINATION AGAINST ALL DEFENDANTS)

86. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 85 of this Complaint as if set forth fully herein.

87. Plaintiff has had, at all relevant times, a "disability" as that term is defined in the State Law. Plaintiff's disability did not prevent her from performing her job with a reasonable accommodation.

88. By the acts and practices described above, defendants have discriminated against plaintiff on the basis of her disability, in violation of the State Law. The Individual Defendants, Extensis, and Banyan have also aided and abetted Corporate Defendants in discriminating against plaintiff on the basis of her disability, in violation of the State Law.

89. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendants' discriminatory practices.

## THIRD CAUSE OF ACTION

(CITY LAW – DISCRIMINATION AGAINST ALL DEFENDANTS)

90. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 89 of this Complaint as if set forth fully herein.

91. Plaintiff has had, at all relevant times, a "disability" as that term is defined in the City Law. Plaintiff's disability did not prevent her from satisfying the essential requisites of her job with a reasonable accommodation.

92. By the acts and practices described above, defendants have discriminated against plaintiff on the basis of her disability, in violation of the City Law. The Individual Defendants, Extensis, and Banyan have also aided and abetted Corporate Defendants in discriminating against plaintiff on the basis of her disability, in violation of the City Law.

93. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendants' discriminatory practices.

94. Defendants engaged in the discriminatory conduct with conscious or reckless disregard of plaintiff's rights.

## FOURTH CAUSE OF ACTION

(ADA – RETALIATION AGAINST GHURKA, BBH, GBB, AND GHURKA BRANDS)

95. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 94 of this Complaint as if set forth fully herein.

96. By the acts and practices described above, Ghurka, BBH, GBB, and Ghurka Brands retaliated against plaintiff for her requesting a reasonable accommodation, in violation of the ADA.

97. Ghurka, BBH, GBB, and Ghurka Brands acted with malice and/or reckless indifference to plaintiff's statutorily protected rights.

98. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of the retaliatory acts by Ghurka, BBH, GBB, and Ghurka Brands.

### FIFTH CAUSE OF ACTION

(STATE LAW – RETALIATION AGAINST ALL DEFENDANTS)

99. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 98 of this Complaint as if set forth fully herein.

100. By the acts and practices described above, defendants retaliated against plaintiff for her requesting a reasonable accommodation, in violation of the State Law. The Individual Defendants, Extensis, and Banyan have also aided and abetted Corporate Defendants in retaliating against plaintiff for her requesting a reasonable accommodation, in violation of the State Law.

101. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendants' retaliatory acts.

### SIXTH CAUSE OF ACTION

(CITY LAW – RETALIATION AGAINST ALL DEFENDANTS)

102. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 101 of this Complaint as if set forth fully herein.

103. By the acts and practices described above, defendants retaliated against plaintiff for her requesting a reasonable accommodation, in violation of the City Law. The Individual Defendants, Extensis, and Banyan have also aided and abetted Corporate Defendants in

retaliating against plaintiff for her requesting a reasonable accommodation, in violation of the City Law.

104. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendants' retaliatory acts.

105. Defendants engaged in the retaliatory conduct with conscious or reckless disregard of plaintiff's rights.

### SEVENTH CAUSE OF ACTION

(FMLA – INTERFERENCE AGAINST GHURKA, BBH, GBB, GHURKA BRANDS, AND EXTENSIS)

106. Plaintiff repeats and realleges paragraphs 1 through 105 as if fully set forth herein.

107. By the acts and practices described above, Ghurka, BBH, GBB, Ghurka Brands, and Extensis interfered with, restrained, and denied plaintiff her rights under the FMLA, in violation of the FMLA, 29 U.S.C. § 2615(a)(1).

108. Ghurka, BBH, GBB, Ghurka Brands, and Extensis knew that their actions violated the FMLA; these violations of the FMLA were willful and not in good faith.

109. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of the actions of Ghurka, BBH, GBB, Ghurka Brands, and Extensis.

### EIGHTH CAUSE OF ACTION

(FMLA – RETALIATION AGAINST GHURKA, BBH, GBB, GHURKA BRANDS, AND EXTENSIS)

110. Plaintiff repeats and realleges paragraphs 1 through 109 as if fully set forth herein.

111. By the acts and practices described above, Ghurka, BBH, GBB, Ghurka Brands, and Extensis retaliated against plaintiff for attempting to exercise her rights, in violation of the FMLA, 29 U.S.C. § 2615(a)(2).

112. Ghurka, BBH, GBB, Ghurka Brands, and Extensis knew that their actions violated the FMLA; these violations of the FMLA were willful and not in good faith.

113. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of the actions of Ghurka, BBH, GBB, Ghurka Brands, and Extensis.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

a. declaring that the acts and practices complained of herein are in violation of the ADA, the FMLA, the State Law, and the City Law;

b. enjoining and permanently restraining these violations of the ADA, the FMLA, the State Law, and the City Law;

c. directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff;

d. directing defendants to place plaintiff in the position she would have occupied but for defendants' discriminatory and retaliatory conduct and making her whole for all earnings and other benefits she would have received but for defendants' discriminatory treatment, including, but not limited to, wages, bonuses, pension, and other lost benefits;

e. directing defendants to pay plaintiff an additional amount as liquidated damages under the FMLA;

    f.  directing defendants to pay plaintiff compensatory damages, including damages for emotional distress, humiliation, and pain and suffering;

    g.  directing defendants to pay plaintiff punitive damages as provided by the ADA and the City Law;

    h.  awarding plaintiff her reasonable attorneys' fees and costs;

    i.  awarding plaintiff such interest as is allowed by law, and damages for any adverse tax consequences stemming from an award; and

    j.  granting such other and further relief as the Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.

Dated: New York, New York
   June 26, 2019

                VLADECK, RASKIN & CLARK, P.C.

            By: _____
                Debra L. Raskin
                Valdi Licul
                Joshua Tarrant-Windt
                Attorneys for Plaintiff
                565 Fifth Avenue, 9th Floor
                New York, New York 10017
                (212) 403-7300